UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Laurie M. Fessler,

          Plaintiff,

v.

Metropolitan Airports Commission,
David Karsnia, and Jason Erickson,

          Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 05-781 ADM/JSM

---

Karlowba R. Powell, Esq., Walker Law Offices, PA, Minneapolis, MN, appeared for and on behalf of Plaintiff.

Andrea D. Kiehl, Esq., Flynn, Gaskins & Bennett, LLP, Minneapolis, MN, appeared for and on behalf of Defendants.

---

## I. INTRODUCTION

On March 8, 2006, oral argument before the undersigned United States District Judge was heard on Defendants Metropolitan Airports Commission ("MAC"), David Karsnia ("Karsnia"), and Jason Erickson's ("Erickson") (collectively, "Defendants") Motion for Summary Judgment [Docket No. 9]. Plaintiff Laurie M. Fessler ("Fessler" or "Plaintiff") alleges constitutional and state tort claims against Defendants arising out of her arrest. Because Plaintiff has failed to proffer sufficient evidence to support her allegations, Defendants' Motion for Summary Judgment is granted.

## II. BACKGROUND[1]

On July 19, 2002, Plaintiff was approaching the Minneapolis-St. Paul International Airport (the "Airport") in her car to meet her husband. Fessler Dep. (Kiehl Aff. [Docket No. 13] Ex. A) at 14. Plaintiff frequently picked her husband up at the airport, and was aware of enhanced security at the airport following the tragic events of September 11, 2001. Id. at 7. Plaintiff pulled to the side of a road approaching the airport to phone for flight information. Id. at 14-15, 18; Fessler Statement (Kiehl Aff. Ex. C) at 1. Defendants Karsnia and Erickson, officers with the Airport Police Department, were on bike patrol, and observed several cars, including Plaintiff's, illegally stopped in the right hand turn lane on Westbound Glumac Drive. Incident Report (Kiehl Aff. Ex. B) at 9.

While Erickson approached a second parked vehicle, Karsnia approached Plaintiff's car and knocked on the window. Fessler Dep. at 15. Having gained Plaintiff's attention, Karsnia asked her to "roll down the window" and simultaneously made a hand gesture to do the same. Incident Report at 9. Plaintiff put her cell phone down, but did not roll her window down or otherwise respond to Karsnia. Fessler Dep. at 15, 19. Karsnia again knocked on Plaintiff's window. Id. Plaintiff then mouthed words to the effect of "okay, I'm leaving," and drove off. Id. at 16, 19. Plaintiff later testified she misunderstood Karsnia's hand signal to roll her window down. Id. at 20.

Karsnia and Erickson both observed Plaintiff quickly depart from the stop location at a

---

[1] For purposes of the instant Motion, the facts are viewed in the light most favorable to Plaintiff, the nonmovant. See Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). However, Plaintiff's recitation of facts in her memorandum does not cite to evidence on the record, nor has Plaintiff conducted depositions of the parties or relevant witnesses.

high rate of speed.  Incident Report at 8, 9.  Karsnia reported that Plaintiff took off at a speed that allowed him to "hear the Toyota's engine 'wind-out.'"  Id. at 9.  Karsnia, because he and Erickson were on bicycles, then called Airport Police dispatch and requested help in stopping Plaintiff's fleeing vehicle.  Id.  Officers Seelig ("Seelig") and Freeman ("Freeman") were dispatched to intercept Plaintiff.  Id. at 10.  Meanwhile, a surveillance camera was positioned to record the stop at the terminal.  Kiehl Aff. Exs. D, E.  The camera recorded the subsequent stop and arrest of Plaintiff.  Although the video is a "stop action" video, with a picture taken every few moments instead of continuously, the video is sufficiently clear to resolve questions regarding Plaintiff's allegations.

     As Plaintiff drove in the direction of the Airport terminal, she observed three Airport police vehicles pass her with their sirens on.  Fessler Dep. at 16.  Plaintiff then saw Erickson standing in the road, signaling her to pull over.  Id. at 16, 22.  Karsnia and Erickson both approached the car and opened Plaintiff's door while simultaneously telling her to get out of the car.  Id. at 16, 23-34; Ex. D.  Plaintiff did not immediately get out of the car, causing Karsnia and Erickson to grab her left arm.  Fessler Dep. at 23-25; Kiehl Aff. Ex. D.  Rather than exit the car, Plaintiff braced herself, held onto the steering wheel, and asked why the officers were doing this.  Fessler Dep. at 16, 23, 24, 116; Incident Report at 8-10.  At this time, Karsnia and Erickson realized Plaintiff still had her seatbelt engaged.  Fessler Dep. at 16.  The video shows Erickson walking away from the car at approximately this point in the arrest sequence.  Id. at 16, 25; Kiehl Aff. Ex. D.  Meanwhile, Karsnia released Plaintiff's arm so she could unbuckle her seatbelt before pulling her out of the car.  Fessler Dep. 16-17, 24; Kiehl Aff. Ex. D.  Karsnia then secured the arrest by handcuffing Plaintiff against the car.  Kiehl Aff. Ex. D.

3

Before being placed in one of the Airport vehicles, Freeman, a female officer, conducted a pat-down search of Plaintiff. Fessler Dep. at 17. After being transported to the airport police station, Plaintiff was taken to an interview room and her handcuffs were removed. Id. at 18; Fessler Statement at 2. After one and one half hours, Karsnia came to the room to interview Plaintiff. Fessler Dep. at 18. During the conversation, Karsnia explained that during the initial stop, he was asking and signaling her to roll her window down. Fessler Statement at 2-3. He then told Plaintiff she would be charged with three misdemeanors, but would not be charged with fleeing a police officer, which is a felony offense. Id. at 3-4. Plaintiff was charged with obstructing legal process, reckless driving, and failure to apply for a Minnesota driver's license. Incident Report at 1. Plaintiff's husband was then contacted, and Plaintiff was released. Fessler Dep. at 37. During her time in custody, Plaintiff never requested medical attention. Id. at 28-29.

Plaintiff's Complaint alleges violations of 42 U.S.C. §§ 1983, 1985, and 1986, violations of the Minnesota constitution, assault and battery, false imprisonment, and negligence.

### III. DISCUSSION

**A.      Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the

4

nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.     42 U.S.C. §§ 1983, 1985, and 1986 Claims**

Plaintiff has advanced multiple claims predicated upon 42 U.S.C. § 1983.  Plaintiff alleges that Defendants unreasonably searched and seized Plaintiff, used excessive force in arresting her, and failed to provide sufficient medical attention.  Plaintiff also alleges conspiracy counts under 42 U.S.C. §§ 1983, 1985, and 1986.  42 U.S.C. § 1983 imposes "liability for certain actions taken 'under color of' law that deprive a person 'of a right secured by the Constitution and laws of the United States.'"  Dossett v. First State Bank, 399 F.3d 940, 947 (8th Cir. 2005) (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 931 (1982)).

**1.     Unreasonable Search and Seizure**

Plaintiff's first § 1983 claim is based on an alleged Fourth Amendment violation of Plaintiff's right to be free from unreasonable search and seizure.  "Probable cause for an arrest exists if, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed."  United States v. Rivera, 370 F.3d 730, 733 (8th Cir. 2004) (citation omitted).  Probable cause is evaluated from the perspective of a reasonable person in the place of the officer.  Id. (citation omitted).  Here, Defendants sought to arrest Plaintiff after she sped away from Officer Karsnia, who was effecting a legitimate traffic stop.  Plaintiff admitted that she misinterpreted Karsnia's signal to

roll down her window believing he was instead signaling her to circle around the airport entrance. Fessler Dep. at 20. There is no evidence in the record, however, to indicate that Karsnia was aware Plaintiff did not understand his words and hand signals. Thus, given Plaintiff's speed of departure from the officers on their bicycles, it was reasonable for Karsnia to assume Plaintiff was attempting to flee the scene, which is a felony offense. Because probable cause existed to believe Plaintiff was committing a crime, the arrest of Plaintiff was not unconstitutional.

### 2. Excessive Force

Plaintiff's claims that she was subject to excessive force are not supported by any evidence in the record other than her own testimony. Plaintiff claims that during her arrest, she was "swung around like a rag doll," "knocked to the ground," and swung until her body hit her own car. Compl. ¶¶ 1, 8; Fessler Dep. at 27-28, 31-32. However, the video of the arrest shows none of these events. Kiehl Aff. Ex. D. The sequence of events depicted in the video demonstrate that the Defendants used reasonable force in securing Plaintiff's arrest. Force is not excessive if it is objectively reasonable under the circumstances. Andrews v. Fuoss, 417 F.3d 813, 818 (8th Cir. 2005). "'The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.'" Id. Here, Defendants had probable cause to believe Plaintiff had committed a felony. Given probable cause and the fact that Plaintiff was driving near the Airport terminal less than a year after the events of September 11, 2001, the actions taken by Defendants in effectuating Plaintiff's arrest were reasonable. Therefore, this claim can not survive Defendants'

Motion.

### 3. Medical Attention

Plaintiff's allegation that she was not provided sufficient medical attention also fails for lack of evidence. Plaintiff admitted in her deposition testimony that, while in custody, she never requested medical attention. Fessler Dep. at 28-29. To demonstrate that sufficient medical attention was not given while in custody, Plaintiff must show that the officers holding her were subjectively aware of a substantial risk of serious harm to Plaintiff. Williams v. Kelso, 201 F.3d 1060, 1065 (8th Cir. 2000). There is no evidence on the record to alert the officers that Plaintiff had incurred any injury. Moreover, no medical records have been produced to demonstrate that Plaintiff was injured. Consequently, there is no basis on which a finding can be made that Defendants failed to provide medical attention to Plaintiff.

### 4. Conspiracy Claims

Plaintiff's conspiracy claims also can not survive scrutiny. A conspiracy claim under §§ 1983 and 1985 is established upon a showing of the following elements: (1), that the defendant conspired with others to deprive him or her of a constitutional right; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999). Although Plaintiff claims the Defendants conspired to deprive her of her constitutional rights, as previously discussed, Plaintiff has failed to demonstrate she was, in fact, deprived of a constitutional right. Even if Plaintiff could establish a constitutional violation, there is no evidence on the record demonstrating an overt act in furtherance of the conspiracy. As to Plaintiff's § 1986 claim, a valid § 1985 case must be established before a § 1986 action can

stand. Gatlin v. Green, 362 F.3d 1089, 1095 (8th Cir. 2004). Here, a valid § 1985 claim does not exist. Thus, all of Plaintiff's conspiracy claims fail.

**C.     Minnesota Constitutional Claims**

Plaintiff's claim that Defendants violated her rights under the Minnesota constitution can not be sustained because Minnesota courts have not recognized a private right of action under the Minnesota constitution. "Minnesota does not recognize a tort for deprivation of due process." Jones v. James, No. Civ. 02-4131, 2005 WL 459652, *8 (D. Minn. Feb. 24, 2005) (citing Bird v. State, Dept. of Public Safety, 375 N.W.2d 36, 40 (Minn. Ct. App. 1985)); see also Northstar Legal Found. v. Honeywell Project, 355 N.W.2d 186, 188 (Minn. Ct. App. 1984) (no action lies under Art. I, § 10). Plaintiff provides no authority to contradict these clear holdings. Judgment will be entered for Defendants on these claims.

**D.     Assault and Battery**

Under Minnesota law, to establish a claim of assault and battery against an on-duty officer, Plaintiff must demonstrate that an officer used excessive force to effectuate the arrest. Paradise v. City of Minneapolis, 297 N.W.2d 152, 155 (Minn. 1980). As previously discussed, the video of the traffic stop demonstrates clearly that excessive force was not used in the arrest of Plaintiff. Kiehl Aff. Ex. D. As a result, her assault and battery claim fails.

**E.     False Imprisonment**

Plaintiff also claims that Defendants falsely imprisoned Plaintiff. However, if probable cause for arrest exists, a claim for false imprisonment can not stand. Johnson v. Morris, 453 N.W.2d 31, 36 (Minn. 1990). Consequently, judgment will be entered for Defendants on Plaintiff's false imprisonment count.

**F.     Negligence**

Finally, Plaintiff alleges a negligence claim against Defendants. In Minnesota, the elements of negligence are: "(1) duty; (2) breach of that duty; (3) that the breach of duty be the proximate cause of plaintiff's injury; and (4) that plaintiff did in fact suffer injury." Johnson v. State, 553 N.W.2d 40, 49 (Minn. 1996). Plaintiff has failed to identify a particular duty of care owed by Defendants to Plaintiff. Even if such a duty exists, the factual record does not demonstrate a duty breach. Additionally, Plaintiff has failed to proffer evidence of injury. Therefore, Plaintiff's negligence claim fails.

**G.     Immunity**

Even if Plaintiff had proffered sufficient evidence on any of her claims, Defendants' Motion must be granted on the basis of qualified and official immunity. The qualified immunity doctrine shields government officials unless the official knew or should have known that their actions would violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Seigert v. Gilley, 500 U.S. 226, 232 (1991). The purpose of qualified immunity exists to protect those who do not knowingly violate constitutional or statutory rights. Here, the record reflects that Defendants had reason to believe that Plaintiff had committed a crime. Therefore, the arrest of Plaintiff, which was occasioned by reasonable force, can not be considered a knowing violation of her rights, and Defendants are entitled to qualified immunity on Plaintiff's constitutional claims.

Additionally, Defendants are entitled to official immunity on Plaintiff's state tort claims. Under Minnesota law, official immunity applies when a public official's duties require the exercise of discretion or judgment. Kari v. City of Maplewood, 582 N.W.2d 921, 923 (Minn.

1998).  Officers engaged in law enforcement efforts are protected by official immunity unless they act with malice.  <u>Elwood v. Rice County</u>, 423 N.W.2d 671, 678-79 (Minn. 1988).  There is no evidence in the record to indicate Defendants acted with malice against Plaintiff.  Consequently, official immunity applies to Defendants with respect to Plaintiff's state tort claims.

### IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Metropolitan Airports Commission, David Karsnia , and Jason Erickson's Motion for Summary Judgment [Docket No. 9] is **GRANTED**; and

2. Plaintiff Laurie M. Fessler's Complaint [Docket No. 1] is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


          s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 25, 2006.